Joseph Kenton McGOWEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–00246–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 20, 2000.

Clinton F. Greenwood, George McCall Secrest, Jr., Houston, for appellants.

William J. Delmore, III, Houston, for appelllees.

* Senior Justice Joe L. Draughn sitting by assignment.
1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised Penal Code.

Before Chief Justice MURPHY and Justices YATES, MAURICE E. AMIDEI, ANDERSON, FOWLER, EDELMAN, WITTIG, FROST and DRAUGHN,* En Banc.

## OPINION ON REHEARING EN BANC

JOE L. DRAUGHN, Justice (Assigned).

We withdraw the opinion of the panel delivered on February 3, 2000, and substitute the following en banc opinion without hearing argument.

The Court of Criminal Appeals vacated our previous judgment in this case and remanded the matter to this Court. *See McGowen v. State*, 991 S.W.2d 803 (Tex. Crim.App.1998). We previously held in this case that the trial court's ruling that prevented the appellant from making an opening statement was reversible error, not subject to a harmless error analysis. *See McGowen v. State*, 944 S.W.2d 481 (Tex.App.—Houston [14th Dist.] 1997), *vacated and remanded*, 991 S.W.2d 803 (Tex. Crim.App.1998). In light of its decision in *Cain*, the Court of Criminal Appeals held that the trial court's refusal to allow the appellant to make an opening statement was subject to harmless error analysis. *See McGowen*, 991 S.W.2d at 803; *Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App. 1997). Therefore, because we did not perform such an analysis, and presumed harm in our previous opinion, the Court of Criminal Appeals remanded this case to us for the purpose of conducting a harmless error analysis.

Joseph Kent McGowen, appellant, entered a plea of not guilty to the first degree felony offense of murder. *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 1992).[1] Following his trial, a jury found him guilty and assessed his punishment at fifteen years' confinement in the Institutional Di-

*See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the Penal Code are to the code in effect at the time the crime was committed.

vision of the Texas Department of Criminal Justice. We reverse and remand.

### BACKGROUND

Appellant was employed as a deputy by the Harris County Sheriff's Department. On August 25, 1992, at approximately 12:30 a.m., armed with an arrest warrant, appellant and Deputy Michael Malloy and Deputy Todd Morong arrived at the home of Susan White, located in an exclusive neighborhood of northwest Harris County. Deputy Malloy went to a rear door of the residence. Appellant and Deputy Morong began knocking on the front door.

Awakened by the banging on the front door of her residence, Ms. White went to the door but refused to open it because she recognized the voice of appellant and, based upon previous encounters, she was afraid of him. Speaking through the door, Ms. White said she would open the door, only if appellant would leave her property. He did not. Ms. White called 911.

Meanwhile, appellant contacted his supervisor by radio and told him that Ms. White was not cooperating and sought permission to force down the door. After obtaining such permission, appellant and Deputy Morong ran to the rear door of the residence, joining Deputy Malloy. They decided Deputy Malloy would kick the door open. After four kicks, the door came open, triggering a home burglar alarm. According to the testimony, Ms. White was still on the phone with the 911 operator pleading for help when the alarm sounded. Appellant entered the residence first, followed by Deputy Malloy and Deputy Morong. Appellant moved through the residence quickly, heading for Ms. White's bedroom. Appellant testified that he saw Ms. White crossing the bedroom doorway with an unknown object in her hand. He claimed to have yelled "Sheriff's office felony warrant" twice and "Come out where we can see your hands." After reaching her bedroom, he further testified that he stepped inside the doorway, saw Ms. White facing him with a handgun pointed in his direction. He testified that he ordered her to put the gun down three times. He then aimed his handgun at Ms. White, who was sitting on her bed, and fired three shots. The first shot grazed Ms. White's face and traveled through the side of her nose, the second entered her chest, and the third traveled through her right arm and entered the right side of her chest. The shot to Ms. White's chest was fatal; she died instantly. Immediately following the three shots, appellant looked toward Deputy Malloy and said "You heard me tell her to put the gun down." Deputy Malloy and Deputy Morong then went to an upstairs bedroom and found Ms. White's teenage son, Jason Aguilar, who was on the telephone with a 911 operator. They arrested him and placed him inside one of their patrol units.

The arrest warrant that appellant obtained for Ms. White was based upon a retaliation charge, which, according to the testimony, was manufactured by appellant. It stemmed from a telephone conversation that occurred between Ms. White and the mother of Michael Schaeffer, who was a friend of Jason Aguilar. Schaeffer was also a "confidential informant" for appellant. Michael Schaeffer previously assisted appellant in an "investigation" which resulted in the arrest of Jason Aguilar for possession of a stolen credit card and participating in the sale of a stolen handgun.[2] During the phone call that made the basis of the retaliation charge, Ms. White allegedly told Michael Schaeffer's mother that "informants don't live long in Houston." However, at the time of the call, neither

---

2. When Jason Aguilar was arrested, his mother arrived at the scene of the arrest. Ms. White was extremely angry about his arrest and allegedly told appellant, "I'm going to get you, you son of a bitch." The record reveals that Ms. White and appellant had encounters on several occasions. Ms. White had made several complaints to appellant's superior officers about Appellant's unprofessional and threatening behavior. She believed appellant was intentionally harassing her and her son.

Ms. White nor Jason Aguilar knew that Michael Schaeffer was acting as an informant for appellant.

Michael Schaeffer told appellant about the telephone conversation and the comment made by Ms. White. Michael Schaeffer also told appellant, however, that neither he nor his family felt that the comment made by Ms. White was a direct threat. Nevertheless, appellant told Michael Schaeffer that Ms. White was threatening him and that "She needs to go to jail."

Appellant contacted the District Attorney's Intake Division and gave false information about Ms. White in order to obtain an arrest warrant. Appellant told the prosecutor at the Intake Division that Ms. White had said to a third party, *inter alia,* "I'm going to kill the CI (confidential informant), for having my son arrested and he'll be dead before the day is over or the night is over." The prosecutor asked appellant if the complainant could be taken seriously. He responded that Ms. White was violent and had been known to carry a gun. The prosecutor told appellant that charges could not be filed against Ms. White until appellant personally spoke to Michael Schaeffer's mother to confirm the threats. Appellant unsuccessfully attempted to contact her in Austin by telephone. Appellant then contacted the Austin Police Department and had a police officer drive to the home of Michael

Schaeffer's mother in the middle of the night to notify her to call him. She called appellant and confirmed that Ms. White told her that "Informants don't live long in Houston" but also told appellant that she did not feel that Ms. White was threatening her or her son, Michael Schaeffer.

Following appellant's telephone conversation with Michael Schaeffer's mother, he nevertheless went to the District Attorney's Intake Division and obtained an arrest warrant on a retaliation charge against Ms. White.

### DISCUSSION

Appellant contends that the trial court erred in denying his request to present an opening statement to the jury and that the error was not harmless.

■■■ After the State rested its case-in-chief, defense counsel requested permission to make an opening statement. The trial judge responded, "Please go ahead." However, the prosecutor objected, declaring to the trial judge that because the State waived making an opening statement at the beginning of the trial, defense counsel was, therefore, not entitled to make an opening statement. The trial judge sustained the State's objection. Defense counsel objected to being denied the opportunity to make an opening statement.[3]

---

**3.** The State argues that appellant waived any error by failing to properly preserve it. Specifically, the State argues the defense counsel's objection was not specific enough and failed to preserve for review the content of the statement he desired to make. In order to preserve error, an adverse ruling on an objection must be obtained in the trial court. *See* TEX. R.APP. P. 33.1(a); *Chappell v. State,* 850 S.W.2d 508, 510 (Tex.Crim.App.1993); *Lewis v. State,* 664 S.W.2d 345, 349 (Tex.Crim.App. 1984). Contrary to the State's assertion, appellant obtained an adverse ruling from the trial court and specifically stated his objection. Therefore, he preserved error. This conclusion is supported by the record, which shows that the State objected to defense counsel making an opening statement and told the judge, "Judge I have to object. The State

made no opening statement and I don't believe the Defense is entitled to make an opening statement unless the State has made a[sic] opening statement." The trial court sustained the State's objection and appellant's trial counsel told the judge, "Your Honor, for the record I would object to the denial of me being able to make an opening statement to the jury." The trial judge responded, "All right." Thus, the nature of the appellant's complaint was made clear to the judge, who could have timely corrected the error. Nothing more was required of the defense attorney to preserve error. Further, in the Court of Criminal Appeals' opinion to remand this matter to this Court for reconsideration, we note that there is nothing to suggest that we should reconsider our previous holding relating to preservation of error.

Neither the prosecutor's objection nor the trial court's ruling is supported by any authority. To the contrary, by statute, a defendant is entitled to present an opening statement to the jury after the close of the State's case-in-chief. *See* TEX.CODE CRIM. PROC. ANN. Art. 36.01(a)(5) (Vernon Supp. 1999); *Moore v. State*, 868 S.W.2d 787, 789 (Tex.Crim.App.1993). Denial of a timely request to present an opening statement is a denial of a valuable right and may constitute error. *See Moore*, 868 S.W.2d at 789. Therefore, in this case, we find that the trial court erred by not allowing appellant's trial counsel to make an opening statement.

That does not end our analysis, however. Citing its decision in *Cain*, the Court of Criminal Appeals has held that a trial court's erroneous decision prohibiting a defendant from presenting an opening statement is subject to a harmless error analysis. *See McGowen v. State*, 991 S.W.2d 803 (Tex.Crim.App.1998). In *Cain*, the court held that "except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of plea, or any other mandatory requirement, is categorically immune to a harmless error analysis." *Cain*, 947 S.W.2d at 264.

■ In *Moore*, the court held that the right to make an opening statement is a state statutory right, not a constitutional imperative or mandate. *See Moore*, 868 S.W.2d at 789. Therefore, the error in this case involves the application of Rule 44.2(b) [4] to determine whether the trial court's ruling constitutes reversible error. *See* TEX.R.APP. P. 44.2(b). Rule 44.2(b)

provides the following: "Any [non-constitutional] error, defect, irregularity, or variance that does not affect *substantial rights* must be disregarded." *Id.* (emphasis added). "A substantial right is affected when the error had a substantial injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997).

### Burden of Proof under Appellate Rule 44.2(b)

■ When analyzing harm under Rule 44.2(b), we review the entire record to determine whether the error substantially influenced the verdict. No burden of proof is assigned to either party on appeal by Rule 44.2(b). *See Ovalle v. State*, 13 S.W.3d 774, 787 (Tex.Crim.App.2000); *Umoja v. State*, 965 S.W.2d 3, 12 (Tex. App.—Fort Worth 1997, no pet.); *Fowler v. State*, 958 S.W.2d 853, 866 (Tex.App.— Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex. Crim.App.1999). If we have grave doubts about its effect on the outcome, or if we find that it had more than a slight influence, we must conclude that the error was such as to require a new trial. *See O'Neal v. McAninch*, 513 U.S. 432, 435–38, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); *Umoja*, 965 S.W.2d at 11.

Although the State invited the error, by improperly objecting to appellant's opening statement, it argues appellant must shoulder the burden, under Appellate Rule 44.2(b), to show the error was harmful. This Court and the First Court of Appeals have held defendants must carry the burden to prove error was harmful under Rule 44.2(b). *See Combs v. State*, 6

4. This case was originally filed with this Court prior to September 1, 1997, the effective date of the new Rules of Appellate Procedure and, technically, the harmless error standard of TEX.R.APP. P. 81(b)(2) would be followed. However, Rule 44.2(a) substantially revised Rule 81(b)(2) and confines analysis to only constitutional errors. Rule 44.2(b) is the present harmless error standard applied to non-constitutional errors. If we correctly discern the Court of Criminal Appeals' ex-

pressed rationale concerning the appropriate standard to follow, we are to follow Rule 44.2(b) in our analysis of the error in this case. *See Twine v. State*, 970 S.W.2d 18, 19– 20 (Tex.Crim.App.1998) (McCormick, P.J., concurring) (Meyers, J., concurring) (Baird, J., dissenting) (all agreeing Rule 44.2(b) to be the applicable harmless error standard). However, even if we were to apply the former harmless error standard, our conclusion in this case would be the same.

S.W.3d 319, 322 (Tex.App.—Houston [14th Dist.] 1999, no pet.h.); *Johnson v. State,* 996.S.W.2d 288, 290 (Tex.App.—Houston [14th Dist.] 1999, pet. granted); *Merritt v. State,* 982 S.W.2d 634, 636–37 (Tex.App.—Houston [1st. Dist.] 1998, pet. ref'd, untimely filed). Both *Combs,* involving the failure of the court to hold an evidentiary hearing, and *Johnson,* concerning the improper denial of challenges to prospective jurors for cause, rely on *Merritt* to the extent of allocating defendant's burden of proof under Rule 44(b)(2). We find ourselves in disagreement with the conclusion in *Merritt,* because it relies on the language in Article 36.19, Texas Code of Criminal Procedure, which specifically sets out the standard of review for jury charge error. We disagree with *Merritt*'s assuming the burden of proof lies with the defendant to show actual harm in jury charge error and then engrafting that assumption onto the general harmless error provision of Rule 44(b)(2). *See Merritt,* 982 S.W.2d at 637 (citing *Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim.App.1994)). The Court of Criminal Appeals recently discussed burdens of proof under Rule 44.2(b). *See Ovalle v. State* 13 S.W.3d 774, 787 (Tex. Crim.App.2000). In *Ovalle,* which specifically involved charge error, the court pointed out that neither party has the burden of proof in a harmless-error analysis:

> We do not resolve the issue by asking whether the appellant met a burden of proof to persuade us that he suffered some actual harm, .... No party should have a burden to prove harm from an error, and there ordinarily is no way to prove "actual" harm. Burdens and requirements of proving actual facts are appropriate in the law of evidence, but they have little meaning for the harmless-error decision.

*Id.* (citing ROGER J. TRAYNOR, THE RIDDLE OF HARMLESS ERROR 25–26 (1970)).

The Court also stated that to evaluate what effect, if any, an error had on the jury's verdict, the appellate court may look only to the record before it. *See id.* "The function of a party carrying the burden is simply to suggest, in light of that record, how prejudice may or may not have occurred. At that point, the court makes its own assessment as to what degree of likelihood exists as to that prejudicial or non-prejudicial impact and then applies to that assessment the likelihood -standard of the particular jurisdiction." *Id.* at 787 (citing WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE 1165 (2d ed.1992)) (emphasis added).

In view of *Ovalle*'s recent pronouncement regarding harmful-error analysis, we find the underpinnings of *Merritt* in allocating the burden of proof are suspect. Thus, we hold that *Combs* and *Johnson*'s reliance on *Merritt,* for the proposition that Appellate Rule 44(b)(2) places the burden of proof on the defendant to show harm, is misplaced, and to that extent, we disavow them based on *Ovalle,* which they preceded. *Ovalle* is clear; there are no assigned burdens of proof in harmless error analysis. *See Ovalle,* 13 S.W.3d at 787. A defendant need only direct the court to the alleged error and prejudice in the record, and the reviewing court must conduct a harm analysis. *See id.*

Similarly, the United States Supreme Court, discussing the comparable federal harmless error rule, declared reviewing courts should not allocate a burden of proof to either party when analyzing the question of whether a substantial right has been affected. *See O'Neal,* 513 U.S. at 435, 115 S.Ct. 992. Rather, the question each judge should consider is "Do I, the judge, think that the error substantially influenced the jury's decision?" *Id; Accord Umoja,* 965 S.W.2d at 12; *Fowler,* 958 S.W.2d at 866. Accordingly, we hold that neither party on appeal has the burden of proof under Appellate Rule 44.2(b). *See also Webb v. State,,* No. 14–98–00407–CR, slip op. at 12–13, 2000 WL 64018 (Tex.App.—Houston [14th Dist.] Jan. 27, 2000, no pet. h.).

## Harmless–Error Analysis

■ Article 36.01 of the Code of Criminal Procedure grants defense counsel the opportunity to present an opening statement to the jury. *See* TEX.CODE CRIM. PROC. ANN. art. 36.01 (Vernon Supp.1999). The purpose of an opening statement is "to communicate to the jury the party's theory of the case in order to aid the jury to evaluate and understand the evidence as it is being presented."[5] *See Twine v. State,* 970 S.W.2d 18, 19 (Tex.Crim.App.1998) (McCormick, J., concurring). The District of Columbia Court of Appeals noted that the "purpose of opening statement for the defense is to explain the defense theory of the case, to provide the jury an alternative interpretative matrix by which to evaluate the evidence, and to focus the jury's attention on the weaknesses of the government's case." *See Oesby v. United States,* 398 A.2d 1, 5 (D.C.1979).

The trial court's erroneous ruling in this case prevented Appellant's opening statement. However, we must determine whether the trial court's erroneous ruling substantially influenced the jury's verdict. This task borders on the impossible. We obviously cannot with any modicum of reality claim to peer into the minds of the juror and determine what influenced their verdict. *See Gonzales v. State,* 994 S.W.2d 170, 171–72 (Tex.Crim.App.1999) (As the Court of Criminal Appeals has recently reaffirmed, some errors "may defy proper analysis or the data may be insufficient to conduct a meaningful harm analysis. In fact, some errors may never be harmless or will rarely be harmless."). At best, we can examine the trial court's denial of this valuable right in the context of this particular case to determine whether we find the error to be harmless. This kind of judicial review is without doubt the most difficult to accomplish, because we have virtually no legal guidelines to provide assistance.

Nevertheless, in our endeavor to perform a meaningful harmless error analysis in this case, we initially observe that a trial court's ruling that prevents a defendant from presenting an opening statement to the jury is the denial of a valuable, statutory right. *See Moore,* 868 S.W.2d at 789; *Caraway v. State,* 417 S.W.2d 159, 161 (Tex.Crim.App.1967). The right for a defendant to make an opening statement is a valuable right because trial counsel has the "right" to communicate directly to the jury on only three occasions during trial: voir dire examination; opening statement; and closing argument. Second, an opening statement provides a defendant an opportunity to outline his defensive theory to the jury, to place the testimony supporting the defensive theory in context, and to expose any weaknesses in the State's case against him. Third, it provides an opportunity for the defendant to create in the minds of the jurors a favorable first impression of the defense case. Thus, an opening statement is particularly valuable in a case where the defensive theory may strongly conflict with the State's case and may not be easily understood by the jury without the assistance of a prior outline or explanation of the defense case and where a defendant presents testimony from several witnesses.

■ Although a defendant may waive opening statement, that does not dilute the valuable nature of this right. Additionally, it is the defendant's right to make his own considered decisions whether to waive valuable statutory rights; neither the State nor the court may deny this choice to a defendant.

■ Relying erroneously on the State's misguided objection, the court took away appellant's right to make an opening statement. Appellant's counsel regarded the opening statement to be important because

---

5. It also has been noted that the "real importance of the opening statement is to provide notice to the jury: to apprise the jurors of a factual context in which to assimilate and integrate the evidence as it unfolds during the trial and to enable them to perform better their sworn role as deciders of the facts." James R. Lucas, *Opening Statement,* 13 U. HAW. L.REV. 349, 350 (1991).

of the serious nature of the case, a felony murder charge, and the complexity of his defense to the charge. Appellant's defensive theory was a complicated assertion of self-defense, which was presented over two days and consisted of testimony from nine witnesses. This difficult task became even more difficult when appellant was denied making an opening statement. An opening statement would have permitted appellant to present his theory of the case and outline the evidence supporting this theory. This was a complex defensive theory because appellant, an experienced law enforcement officer, and two other experienced law enforcement officers entered the female victim's residence with their guns drawn.

During the State's case, the jury heard testimony showing that the authority under which the officers entered the victim's residence was based upon a retaliation charge, a charge which was manufactured by appellant. At no time did the victim make any verbal threats to any of the officers inside her residence. When appellant confronted the victim, he was standing in the doorway of her bedroom, with two other law enforcement officers nearby. The victim was alone, sitting on her bed. Prior to being shot and killed by the appellant, she had been on the telephone with a 911 operator pleading for help. Appellant testified she was pointing a gun at him, and he shot after warning her to drop the weapon.

Contributing to the overall complexity of appellant's defensive theory was a history of the encounters between appellant and the decedent. In short, after the State presented its evidence and case in chief, appellant was faced with the difficult undertaking—he must persuade the jury he acted in self defense when he shot and killed the decedent. Thus, the trial court denied appellant of the valuable opportunity to present his case and provide an interpretive matrix for the jury to aid it by providing a contrast to the State's case. Given the circumstances of the defense, combined with the number of defense witnesses, the presentation of an opening statement by appellant could have aided the jurors' understanding of the defensive theory and allowed them to better assimilate and integrate the defense evidence as it unfolded.

While the evidence of appellant's guilt was compelling, it was not overwhelming. To the extent that we are able to perform a meaningful harmless error analysis in this case, we have "grave doubts" about the error's effect on the outcome of the trial. Therefore, under Appellate Rule 44.2(b), we do not find the error to be harmless.[6]

Accordingly, we sustain appellant's point of error, reverse the trial court's judgment and remand for a new trial.

Justice HUDSON not participating.

---

**6.** The State in it Motion for Rehearing sees our ruling here as in irreconcilable conflict with this court's recent panel opinion in *Davis v. State*, 22 S.W.3d 8, (Tex.App.—Houston [14th Dist.] 2000, no pet. h.). *Davis* also involved the trial court's improperly denying the defendant the right to make an opening statement. This court, under the circumstances of that case, held the error was harmless. In *Davis*, the evidence of guilt was overwhelming, the case was uncomplicated, and lasted only one day with few witnesses. The case was significantly different from the one now before us. As *Davis* pointed out, it did not hold that the denial of an opening statement in all criminal cases constituted harmless error. *See id.* Nor did it assign a burden of proof. Thus, no conflict exists between *Davis* and our holding today.