**Patrick Isaac ESPINOSA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–99–00464–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 31, 2000.

Rehearing Overruled Oct. 12, 2000.

Joseph Porto, Hudson, for appellants.

Alan Curry, Houston, for appellees.

Panel consists of Justices HUDSON, FOWLER, and EDELMAN.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Patrick Isaac Espinosa, was found guilty by a jury of murder; his punishment was assessed at confinement in the state penitentiary for forty-five years. In three issues for review, he asserts: (1) the trial court committed harmful error by refusing to allow his counsel to make an opening statement; (2) the trial court erred in instructing the jury about good conduct time; and (3) the parole charge mandated by Article 37.07, Section 4 of the Texas Code of Criminal Procedure is unconstitutional because it contains erroneous information regarding good conduct time. We affirm.

The record reflects the complainant was attending a party at the home of a friend, Troy Thompson. After becoming intoxicated, five members of the party, including the complainant, decided to initiate a fight with a group of Hispanics who were attending a separate party at a nearby residence. The complainant and four other young men walked down the street to appellant's residence with the intention of provoking a fight. After shouts of profanity and racial slurs, a fight erupted. The complainant and his companions soon found themselves engaged in a brawl with up to twenty members of the Latin Kings, a large Hispanic gang. During the fight, appellant fatally stabbed the complainant in the neck.

In his first issue for review, appellant complains the trial court committed harmful error by refusing to allow his trial counsel to make an opening statement before the jury. After the prosecutor waived

her right to make an opening statement, appellant's trial counsel requested the opportunity to make an opening statement either before the State's case-in-chief or before his own case-in-chief. The trial court denied the requests.

■■■ Texas law entitles a defendant to present an opening statement to the jury. *See* Tex.Code Crim. Proc. Ann. arts. 36.01(a)(5) (Vernon 1981 & Supp.2000); *Moore v. State,* 868 S.W.2d 787, 789 (Tex. Crim.App.1993). Denial of a timely request to present an opening statement is a denial of a valuable right and may constitute reversible error. *See McGowen v. State,* 25 S.W.3d 741, 745 (Tex.App.— Houston [14th Dist.], no pet. h.) (en banc) (citing *Moore,* 868 S.W.2d at 789).

Here, appellant's trial counsel made a timely request to exercise his statutory right to make an opening statement before the jury. Under these circumstances, we hold it was error for the trial court to deny counsel's request.

■■■ The Court of Criminal Appeals recently has held that our inquiry does not to end here, however. *See McGowen v. State,* 991 S.W.2d 803 (Tex.Crim.App. 1998). Once we have determined the denial of an opening statement was error, we must conduct a harm analysis to determine whether it rises to the level of reversible error. *Id.; McGowen,* 25 S.W.3d at 745. Because the error here involves a statutory, rather a constitutional right, our harm analysis is guided by Rule 44.2(b) of the Texas Rule of Appellate Procedure. *See Moore,* 868 S.W.2d at 789; *McGowen,* 25 S.W.3d at 745. Rule 44.2(b) states that "any [non-constitutional] error that does not affect a substantial right must be disregarded." *See* Tex.R.App. P. 44.2(b). A substantial right is affected when: (1) the error had a substantial injurious effect or influence in determining the jury's verdict;

or (2) leaves one in grave doubt whether it had such an effect. *See Davis v. State,* 22 S.W.3d 8, 12 (Tex.App.—Houston [14th Dist.] 2000, no pet. h.). Determining whether the trial court's erroneous denial of the right to make an opening statement substantially influenced the jury's verdict is a task that borders on the impossible. *See McGowen,* 25 S.W.3d at 747. "At best, we can examine the trial court's denial of this valuable right in the context of this particular case to determine whether we find the error to be harmless." *Id.,* at 747. We therefore review the entire record to discern whether the error had a substantial effect on the jury in the context of the entire case against the defendant. *See Davis,* 22 S.W.3d at 12.

This court has recently reached two disparate results in deciding the harm caused by an erroneous denial of the right to make an opening statement. *Compare McGowen,* 25 S.W.3d 741 (finding the error harmful) *with Davis,* 22 S.W.3d 8 (finding the error harmless). The difference in the disposition of these cases was due to the difference in their complexity of facts, defensive issues, and length of trial. *McGowen* involved a deputy sheriff who shot a woman in her home while attempting to execute an arrest warrant. *See McGowen,* 25 S.W.3d at 742-43. McGowen's defensive theory was a complicated assertion of self-defense, which was presented over two days and consisted of testimony from nine witnesses. *Id.,* at 748. Further complicating the facts, the State asserted that McGowen manufactured a charge against the woman to procure an arrest warrant. *Id.* In contrast, *Davis* was an uncomplicated possession of cocaine case that lasted only one day. *See Davis,* at 12–13. Davis's defense did not involve a new or complicated theory that the jury might have found difficult to understand without clarification. *Id.*

We believe the circumstances of this case are more akin to those in *Davis* than those in *McGowen* and militate against a finding of harm. Here, the prosecution and defensive theories presented by the State and appellant were simple. The facts regarding the fight were straightforward and easy to follow. The guilt/innocence portion of appellant's murder trial lasted only one day. While appellant presented the defensive theory of self-defense or defense of another, the justification was relatively uncomplicated and straightforward in comparison to the defensive theory presented in *McGowen.* While the trial court certainly erred in denying appellant's counsel the right to make an opening statement, we cannot say that such denial had a substantial injurious effect or influence in determining the jury's verdict. Based on the similarity of this case to *Davis,* we hold that the trial court's denial of the right to make an opening statement in this case was harmless. Appellant's first point of error is overruled.

In his second and third issues for review, appellant contends: (1) the trial court erred in instructing the jury regarding the effect of good conduct time; and (2) the statute mandating such an instruction is unconstitutional.

■ The instruction given to the jury by the trial court is mandated by Article 37.07, Section 4(a) of the Texas Code of Criminal Procedure. *See* Tex.Code Crim. Proc. Ann. art. 37.07 § 4(a) (Vernon Supp. 2000); *Cormier v. State,* 955 S.W.2d 161, 164 (Tex.App.—Austin 1997, no pet.) (noting the instruction in article 37.07, section 4(a) is mandatory). This charge is universally applicable to all felonies listed in section 3(g)(a)(1) of article 42.12, which includes the offense of murder. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 4(a). Moreover, appellant made no objection to

the charge. To preserve an issue for appellate review, a complaint must generally be presented to the trial court by a timely request, objection, or motion, stating the specific grounds for the ruling sought. *See* Tex.R.App. P. 33.1(a). Here, appellant has not cited, nor have we found any portion of the record where he raises a constitutional challenge to Article 37.07, Section 4. Thus, the issue is not properly before us.[1]

■ Even if appellant could raise a constitutional challenge for the first time on appeal, his contention would nevertheless fail. Apart from an outright pardon, there are two statutory means by which an inmate may obtain an early release from the penitentiary—"mandatory supervision" and "parole." An inmate's eligibility for release differs significantly under these two systems. Mandatory supervision, as the name implies, is a mandatory release program that is calculated according to a simple formula. When "the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced," he must be released from the penitentiary under the supervision of the Board of Pardons and Paroles. *See* Tex. Gov't Code Ann. § 508.147 (Vernon 1998). Parole, as distinguished from mandatory supervision, is completely discretionary. *See* Tex. Gov't Code Ann. § 508.001 (Vernon Supp.2000). If eligible, an inmate *may* be released on parole if the parole panel determines that the inmate's release will not increase the likelihood of harm to the public. *See* Tex. Gov't Code Ann. § 508.141(d) (Vernon 1998).

Because mandatory supervision is based upon a mathematical formula, no consideration is given to the likelihood of harm to the public engendered by the inmate's release. This discomforting aspect of man-

---

1. *See Ladd v. State,* 3 S.W.3d 547, 564 (Tex. Crim.App.1999) (overruling appellant's constitutional challenges to a jury charge instruction on the law of parties because the constitutional arguments had not been raised in the trial court and because the *Almanza* egregious harm standard does not apply to charge errors implicating state or federal constitutional rights).

datory supervision is moderated somewhat by the fact that certain felons are ineligible for mandatory supervision. Where, as here, an inmate has been convicted of murder, he is ineligible for mandatory supervision. *See* Tex. Gov't Code Ann. § 508.149 (Vernon Supp.2000). Thus, appellant contends he cannot obtain an early release through the accrual of good time. Accordingly, appellant claims the charge given to the jury was so misleading as to infringe upon his right to due process and due course of law as guaranteed by the federal and state constitutions. *See Jimenez v. State,* 992 S.W.2d 633, 638–39 (Tex.App.-Houston [1st Dist.] 1999, pet. granted) (holding the instruction mandated by Article 37.07 to be unconstitutionally misleading).

When evaluating whether to release an inmate on parole, the parole panel is assisted by guidelines developed by the board. *See* Tex. Gov't Code Ann. § 508.144 (Vernon 1998). The standard parole guidelines include the following factors: (1) current offense or offenses; (2) time served; (3) the risk factors (consideration for public safety); (4) institutional adjustment; (5) the criminal history; (6) official information supplied by trial officials including victim impact statements; and (7) information in support of parole. *See* 37 Tex. Admin. Code § 145.2 (1995) (Texas Board of Pardons and Paroles, Standard Parole Guidelines). Appellant claims these factors do not include the accumulation of good conduct time. However, the accrual of good conduct time is both (1) evidence of an inmate's "institutional adjustment" and (2) information in support of parole. In its policy statement relating to parole release decisions, the Board of Pardons and Paroles has specifically stated:

(1) Other than on initial parole eligibility, the person must not have had a major disciplinary misconduct report in the six-month period prior to the date he is reviewed for parole; *which has resulted in loss of good conduct time* or reduction to a classi-

fication status below that assigned during that person's initial entry into TDCJ–ID.

37 Tex. Admin. Code § 145.3 (1999) (Texas Board of Pardons and Paroles, Policy Statements Relating to Parole Release Decisions by the Board of Pardons and Paroles) (Emphasis added).

Thus, good conduct time is an important aspect of both mandatory supervision and parole. In the context of mandatory supervision, good conduct time is perhaps a more decisive factor because it is part of the equation used in calculating the release date. Parole, on the other hand, is discretionary and is not computed according to a formula. However, the accumulation of good conduct time is nevertheless an important consideration when deciding whether an inmate should be released on parole, *i.e.,* if an inmate's misconduct has resulted in the loss of good conduct time, he is ineligible for parole for at least six months.

Here, the jury was instructed that appellant could "earn time off the period of incarceration imposed through the award of good conduct time." The charge did not mention mandatory supervision, but referred only to good conduct time as a possibility rather than a certainty. Moreover, the jury was instructed that it could not accurately predict how the parole law and good conduct time might be applied to appellant because the application of those laws would depend upon decisions made by prison and parole authorities. Finally, the jury was told that while it could consider the existence of the parole law and good conduct time, it could not consider the extent to which good conduct time might be awarded to or forfeited by appellant, nor the manner in which the parole law might be applied to appellant. While the use of the word "earn" may be more indicative of mandatory supervision than parole, we do not find the charge so misleading as to have denied appellant his right to due process and due course of law. *See Cagle v. State,* 23 S.W.3d 590 (Tex.App.—

Fort Worth 2000); *Edwards v. State,* 10 S.W.3d 699 (Tex.App.—Houston [14th Dist.] 1999, pet. granted); *Luquis v. State,* 997 S.W.2d 442 (Tex.App.—Beaumont 1999, pet. granted); *Martinez v. State,* 969 S.W.2d 497 (Tex.App.—Austin 1998, no pet.).

Accordingly, appellant's second and third points of error are overruled. The judgment of the trial court is affirmed.