Opinion issued February 10, 2005








     







In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01143-CR




CRAIG WAYNE MOORE, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 964447




MEMORANDUM OPINION
          A jury found appellant, Craig Wayne Moore, guilty of the offense of first
degree murder. The trial court found true the enhancement paragraph alleging a prior
felony conviction and assessed punishment at forty-seven years’ confinement. In this
appeal, Moore contends that the trial court erred in (1) excluding testimony essential
to his defense and (2) sustaining the State’s objections during his testimony, thereby
undermining his ability to put on a defense. We affirm the judgment of the trial court.
Background
          Moore shared an apartment with his girlfriend, Colleen LaPoint, and his two
children. LaPoint was sexually involved with the deceased complainant, Joshua
Harris. Harris often gave LaPoint money or narcotics in exchange for sexual
relations. LaPoint testified that, in the early morning hours of March 14, 2002, Harris
picked her up from the apartment parking lot and brought her to his apartment, where
they engaged in sexual relations. LaPoint further testified that she returned to her and
Moore’s apartment around forty-five minutes after visiting Harris. Moore arrived at
their apartment soon thereafter, and demanded that LaPoint produce either the money
or narcotics that he believed she should have received from Harris. After LaPoint
answered that she did not have any narcotics or money, Moore became angry and
demanded that LaPoint find and give him his gun. During her search for his gun,
Moore stabbed LaPoint. He then forced LaPoint to take him to Harris’s apartment
and to knock on his door. After Harris opened the door, Moore held the gun up to
Harris’s head, began cursing at him, and requested money for LaPoint’s earlier
encounter with him. Moore then fired his gun into Harris’s face, fatally wounding
him.
          Contrary to LaPoint’s description of the events, Moore testified that he went
to Harris’s apartment to pick up LaPoint only after receiving a phone call from Harris. 
As Harris opened his apartment door, Moore saw LaPoint standing inside. Harris
began yelling at Moore, a struggle ensued, and the gun accidentally discharged,
killing Harris. 
          Both Lapoint and Moore testified that, after Moore shot Harris, they returned
to their apartment, called a family member to come pick them up, and went to his
mother’s residence in Humble. Authorities arrested Moore for Harris’s murder during
the following week. Discussion
Evidentiary Ruling
          In his first issue, Moore claims that the trial court erred in denying him the
ability to question the medical examiner about Harris’s tattoos. Moore contends that
the tattoos are evidence of Harris’s character, and that such evidence is permitted by
Texas Rule of Evidence 404(a)(2). Moore also contends that the trial court limited
Moore’s cross-examination of the medical examiner concerning Harris’s tattoos and
thus impaired Moore’s constitutional right to confront his accusers. The State
responds that Moore failed to preserve this issue for appeal because he did not make
an offer of proof or a bill of exception. 
          We agree with the State. In order to preserve error on appeal, a party must
specifically object and obtain a ruling from the trial court, or object to the trial court’s
refusal to rule. Tex. R. App. P. 33.1. Arguments on appeal must comport with the
objection at trial, or the error is waived. Dixon v. State, 2 S.W.3d 263, 273 (Tex.
Crim. App. 1998); Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). 
This is true even if the complaint is based upon constitutional grounds. Espinosa v.
State, 29 S.W.3d 257, 260 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d). 
          Texas Rule of Evidence 103(a)(2) requires Moore to make an offer of proof of
the proposed evidence known to the trial court, unless the substance is apparent from
the context, if the ruling of the trial court excludes the evidence. See also Tex. R.
App. P. 33.2; Guidry v. State, 9 S.W.3d 133, 153 (Tex. Crim. App. 2000); Gutierrez
v. State, 764 S.W.2d 796, 798 (Tex. Crim. App. 1989); Howard v. State, 962 S.W.2d
119, 122 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d). An offer of proof must
show that the excluded evidence is relevant and admissible. See Warner v. State, 969
S.W.2d 1, 2 (Tex. Crim. App. 1998). 
          Here, Moore alleges that Harris’s status as a “thug” and his tattoos verifying
his lifestyle make it more probable that he possessed a character trait for violence. 
Moore’s trial counsel, however, did not present a bill of exceptions to the trial court
showing the medical examiner’s answers to the questions propounded. The following
exchange occurred during the defense counsel’s cross-examination of the medical
examiner: 
Trial Counsel: Right. Now, one other thing we want to talk about, let’s
talk about those tattoos. If you’ll refer to your report for a second, do
you remember seeing tattoos on Mr. Harris’s body?

          State: Your Honor, I’m going to object. May we approach?
 
(WHEREUPON, the following was held outside the hearing of the jury at the
bench.)
 
State: Your Honor, I’m going to object to the tattoos on the victim’s body not
being relevant to this doctor’s testimony in the cause of death in this case. 
They’re not relevant except to show that the complainant had tattoos. 

          The Court: Well, you asked him about it. 

          Trial Counsel: Not only that, Your Honor--

          The Court: Let me finish.

          Trial Counsel: Okay, I’m sorry.
 
State: Judge, I just asked him if he found any markings on the body to be
complete. I didn’t go into any details regarding the tattoos, or what they were,
how many he had, or where were they, or what did they say [sic]. I just, to be
complete with regards to the autopsy, said did he have any markings on his
body and that’s it. 
 
Trial Counsel: The autopsy report, it is fully detailed because it has to be and
told the conditions of the body. And it testifies to tattoos-- that certain tattoos
on there that, I think, information needs to come out in light of the first
witness. 

          The Court: That identifies what?

          Trial Counsel: I’m sorry?

          The Court: I didn’t hear the last thing you said.
 
The Court [sic]: In light of the fact that we have a witness that talked about this
hustling life, the hustler, this guys’s a hustler and what that means. We need
to know how dedicated that he was to the idea. On his body he has this
language that would indicated that he’s a hustler, “Thug Life,” or whatever it
is. It’s in the autopsy report, it’s there. 

          The Court: Which is not in evidence. 
 
Trial Counsel: I know it’s not, but he did an examination of the body. It has
been mentioned and I think we need to be able to complete it--

          The Court: What is it you want to do?
 
Trial Counsel: I want, of course, I want to continue to--I have to show that this
guy was a thug, okay. 
 
State: What does it have to do with whether or not the complainant was a thug
as to whether or not this defendant committed murder of the complainant. It’s
not relevant whether or not he had tattoos on the body.
 
The Court: . . . Here’s the thing, I’m not sure it’s relevant yet, I mean, at this
point. But you know in answer to your question, you can have the doctor back
if it becomes relevant. I don’t know what the testimony is going to be, I don’t
really know. 
 
Trial Counsel: All I’m doing, I think--it’s a murder case, about to show the
relationship between the defendant and talk about the character of the victim
in this case. 

          State: The character of the victim is not--
 
          The Court: . . . There’s a key word in that particular provision of the law and that is relevant to facts and circumstances. Now I’m not saying it won’t be
relevant, but I don’t know what the relevance is at this point as to what tattoos
he had. 

          Trial Counsel: The relevance that he was--

          The Court: What’s it relevant to now?

          Trial Counsel: It’s relevant to the fact that he was a gangster, gang member.

          The Court: What is that relevant to? What is that relevant to at this point?
 
Trial Counsel: My guy knew that the reason he had to bring that gun over there
and come over there is because he–

                    The Court: Well, I’ve heard no evidence about any of that. 

          Trial Counsel: My guy will be testifying and when he testifies it will come out. 

The Court: Well, you’ll have to keep the doctor here, then.
 
Trial Counsel: Okay.
 
State [sic]: He’s got to testify next door, so, I mean, he’ll be around. I
don’t want to lose him, so he needs to wait out here because you only
have one more witness, right?

          State: Right, Judge. 
 
The Court: If you’re still maintaining your objection, he’s going to have
to wait here.
 
State: All right. I will, Your Honor. You’re not to go anywhere. 
Moore also failed to make an offer of proof as to the purported meaning of Harris’s
tattoos, nor did he demonstrate that the medical examiner had personal knowledge
about this subject. Moreover, the trial court did not exclude all tattoo evidence in its
ruling. Rather, it restricted the examination in scope until counsel provided a proper
foundation for the testimony. The trial court’s ruling thus falls within its discretion
to evaluate the probative value of the facts sought to be admitted, and does not
constitute a prohibition on cross-examination that violates the Sixth Amendment. See
Gutierrez, 764 S.W.2d at 799. We therefore hold that Moore has waived his
complaint as to the medical examiner’s testimony. 
Moore’s Ability to Present his Defense
          Moore next contends that during his direct testimony, the State repeatedly
made unfounded objections, which the trial court erred in sustaining. Moore asserts
that these objections denied him the ability to present his defensive theory that Harris
was the initial aggressor. Specifically, Moore contends that the trial court precluded
him from describing his living situation in the apartment complex in which Harris
resided, his knowledge of Harris, including Harris’s possible gang affiliations, and
his previous interactions with Harris. Moore further contends that the trial court’s
erroneous evidentiary rulings constitute constitutional error, and thus the State must
show that the errors did not harm him beyond a reasonable doubt. Williams v. State,
958 S.W.2d 186, 194 (Tex. Crim. App. 1997). Alternatively, Moore complains that
the “trial court’s error affected his substantial rights and therefore his case should be
overturned under Texas Rule of Appellate Procedure 44.2(a).”
          The State responds that Moore has failed to preserve his issue for appeal. In
order to preserve an error for the exclusion of evidence, a party must make a
sufficient offer of proof, demonstrating that the excluded evidence is relevant and
admissible. Tex. R. App. P. 33.2, Tex. R. Evid. 103(a)(2); Guidry, 9 S.W.3d at 153. 
Moore never made any offer of proof as to any excluded testimony. 
          At the outset, we note that Moore’s issue regarding the State’s “incessant and
invalid objections” does not give this court notice of his complaint. See Tex. R. App.
P. 38.1(e), 38.9(b). Moreover, Moore failed to preserve the trial court’s rulings for
this appeal. In order to preserve error on appeal, a party must make a specific
objection and obtain a ruling from the trial court, or object to the trial court’s refusal
to rule. Tex. R. App. P. 33.1. Texas Rule of Evidence 103(a)(2) requires Moore to
make an offer of proof of the proposed evidence known to the trial court, unless the
substance is apparent from the context, if the ruling of the trial court excludes the
evidence. See also Tex. R. App. P. 33.2; Guidry, 9 S.W.3d at 153. Moore failed to
make an offer of proof of answers as to any of the questions propounded, and has
waived this issue. Moreover, the Texas Court of Criminal Appeals has held that “the
exclusion of a defendant’s evidence will be constitutional error only if the evidence
forms such a vital portion of the case that exclusion effectively precludes the
defendant from presenting a defense.” Potier v. State, 68 S.W.3d 657, 665 (Tex.
Crim. App. 2002). In Poitier, the Court relied on federal jurisprudence and declared
that erroneous evidentiary rulings rarely rise to the level of denying the fundamental
constitutional right to present a meaningful defense. Id. at 663. 
          Here, Moore presented his defense that Harris was the first aggressor, and we
cannot find that the trial court’s rulings effectively precluded the defendant from
presenting a defense. The State objected to Moore’s testimony primarily on the
ground that it was non-responsive. At other points, the State objected that the
testimony was hearsay or improper character evidence. Moore does not demonstrate
that any ruling the trial court made on the objections was error, but merely asserts that
the State’s objections were “incessant and invalid.” Despite the State’s objections,
Moore answered questions and provided evidence regarding his self-defense theory. 
The record indicates that Moore testified that he was living at the Sandalwood
Apartment complex at the time of the murder. Moore also testified that he previously
had found Harris in his apartment selling narcotics to LaPoint, and that he knew
Harris associated with a group of men known as Slim Shady, Black, and Junior. 
Further, during Moore’s testimony, he described the events that occurred inside
Harris’s apartment on the night the murder took place. According to Moore, Harris
grabbed him and began choking and yelling at him. During the ensuing struggle, the
gun accidentally discharged. The fact that Moore may have been unable to present
his case to the extent and in the form he desired is not prejudicial if, as here, he was
not prevented from presenting the substance of his defense to the jury. See Potier,
68 S.W.3d at 666. The record does not support Moore’s contention that the State’s
objections and the trial court’s rulings during his testimony precluded him from
presenting his defense. We therefore overrule his second issue. 
 

Conclusion
          We conclude that Moore failed to properly preserve both his issues for appeal,
and he was able to present his defense to the jury. We therefore affirm the judgment
of the trial court.
                                                             

 
                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.
Do not publish. Tex. R. App. P. 47.2 (b).