Opinion issued February 24, 2005









     








In The
Court of Appeals
For The
First District of Texas




NOS. 01-03-01317-CR
          01-03-01318-CR




MAURICE CALVIN TURNER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause Nos. 03CR1206 & 03CR1207



MEMORANDUM OPINION

          A jury found appellant, Calvin Maurice Turner, guilty of the felony offenses
of impersonating a public servant and theft from a person, as charged in the
indictments.


 The trial court assessed punishment at seven years’ confinement for
impersonating a public servant, suspended the sentence, and placed Turner on
community supervision. The trial court assessed punishment at fourteen months’
confinement in state jail for the theft offense. In this appeal, Turner contends that the
trial court erred in: (1) refusing to grant his motion for a mistrial based upon a Batson
challenge; (2) refusing to include his requested definition of public servant in the jury
charge; and (3) refusing to exclude witness identification testimony because the
identification was the result of an impermissibly suggestive pretrial procedure.


 We
affirm.Background
          On the evening of April 5, 2003 in Galveston, Texas, Sarah Oney Sifuentes and
her husband, Marcos Sifuentes, picked up Stacey Hebert and the complainant, Daryl
Harris, from Daryl’s mother’s house. The group went to a convenience store where
Daryl purchased a twelve-pack of beer. They then left the parking lot to return to
Daryl’s mother’s house. As Sarah drove, she noticed a white Crown Victoria
following them. After the Crown Victoria activated green and blue flashing lights on
the dashboard, Sarah believed that a police officer was signaling for her to pull over
her vehicle, and she stopped. Turner, the driver of the Crown Victoria, announced
on a bull horn for the driver of the vehicle to get out of the car. Sarah got out and
went to the back of her car. 
          Turner stepped out of his car wearing a black turtleneck with the word
“PATROL” embroidered on the neck and across the back, and he wore a belt around
his waist that held a gun and handcuffs. Turner asked Sarah how many indiviudals
were in her car, then demanded that she put her hands on the trunk of his car. Turner
peered inside Sarah’s car, saw an opened beer, and demanded that Marcos, Stacey,
and Daryl exit the vehicle and put their hands on the car. Turner patted them all
down, and made the men take out their wallets and place them on his car. Turner
announced to Daryl that he was going to jail, handcuffed him, and placed him in the
backseat of his Crown Victoria. Turner then requested that the others give him their
driver’s licenses and returned to his car. Once inside, he asked Daryl if he wanted to
go to jail, and Daryl answered “no, officer, but I understand that I had an open
container.” Turner then said, “I’m going to let you go. . . . Well, I’m going to have
to take your money.” Turner took $122.78 from Daryl’s wallet, unhandcuffed him,
and let him out of the Crown Victoria. Daryl returned to Sarah’s car and stated that 
“he had to keep my money but he just let me go.” The group then drove back to
Daryl’s mother’s house.
          After returning to his mother’s house, Daryl called the police. The police
apprehended Turner, arrested him, and placed him in the back seat of the patrol car. 
Within forty-five minutes of the events giving rise to this action, all four individuals
identified Turner as the man who pulled them over and stole Daryl’s money. 
Although Turner never stated he was a police officer, all four individuals testified that
they believed that he was a police officer or a member of a raid team. 
          Turner testified that he was traveling to a convenience store when he noticed
a person consuming alcohol in the rear seat of the car traveling in front of him. He
stated that he followed the vehicle for a few blocks and shined his “spotlight” into the
car. The car then turned right and stopped. He approached Sarah, the driver, and she
gave Turner her driver’s license. He admitted that he stopped the vehicle because the
consumption of alcohol while driving is “wrong” and that he told Daryl, as the only
person consuming alcohol, that he was going to jail. According to Turner’s depiction
of the events, Daryl stepped out of the car, poured out his beer, and then set the
remaining beer on the curb.
          Turner denied placing handcuffs on Daryl or placing him inside his car. He
also testified that he told the individuals that he was not a police officer. Finally, he
denied taking any money from Daryl’s wallet. 
Discussion
Batson Challenge
          In his first issue, Turner claims that the trial court erred in denying his motion
for a mistrial based upon a Batson challenge. He contends that, after both sides made
their strikes for cause, the State then struck all of the remaining African-Americans
on the venire panel. The State responds that Turner had the burden of persuasion to
prove that the State’s peremptory strikes were racially motivated and, further, Turner
failed to produce any evidence that the State’s reasons for its strikes were false. 
          A party may not peremptorily strike a juror simply because of the juror’s race. 
Batson v. Kentucky, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717 (1986). We follow a
three-step process in determining the propriety of a Batson challenge. Purkett v.
Elem, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1770-71 (1995); Ford v. State, 1
S.W.3d 691, 693 (Tex. Crim. App. 1999). First, the opponent of a peremptory
challenge must establish a prima facie case of racial discrimination, essentially a
burden of production. Ford, 1 S.W.3d at 693. Then, in step two, the burden of
production shifts to the proponent of the strike to respond with a race-neutral
explanation. Id. If a race-neutral explanation is proffered, then third, the trial court
must decide whether the opponent of the strike has proved purposeful racial
discrimination. Id. “The burden is on the defendant to convince the trial court that
the prosecution’s reasons were not race-neutral.” Ford, 1 S.W.3d at 693; see also 
Jasper v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001); see also Camacho v.
State, 864 S.W.2d 524, 529 (Tex. Crim. App. 1993). Thus, the burden of production
shifts from the defendant in step one to the State in step two, but the burden of
persuasion never shifts from the defendant. Ford, 1 S.W.3d at 693. We review the
trial court’s handling of this three-step process under the clearly erroneous standard. 
Gibson v. State, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). “Clearly erroneous”
is a highly deferential standard, used because a trial court is in the best position to
make the credibility determinations key to determining such a challenge. Id.; see also
Jasper, 61 S.W.3d at 421-22. 
          The record indicates that the State peremptorily struck the remaining five
African-American jurors on the venire panel after both sides made their challenges
for cause. Turner challenged the State’s exercise of peremptory challenges as to four
of the jurors. After Turner moved for a mistrial based on Batson challenge, the State
proffered various race-neutral reasons for exercising its strikes: (1) Juror #9 admitted
she previously had testified in a murder trial, and she resides in Texas City, Turner’s
hometown; (2) Juror #10 knew Turner’s trial counsel, through a common friend, and
he resides in Texas City; (3) Juror #15 resides in Texas City; (4) the prosecutor
believed he previously had prosecuted Juror #21’s son, and he also resides in Texas
City; (5) Juror #25 resides in Texas City and the trial court stated on the record that
the juror had a problem speaking due to illness.
          The prosecutor explained that because Turner resides in Texas City, he struck
all prospective jurors who resided in Texas City. The record before us supports the
fact that Turner and his mother live in Texas City. Turner’s pauper’s oath and his
mother’s letter to the trial court indicate a Texas City address. The trial court
determined that the State satisfied the second step of the Batson analysis by offering
race-neutral reasons for its strikes. 
          The third step in the Batson analysis focuses on the persuasiveness of the
State’s justification. Turner has the burden to persuade the trial court that the
allegations of purposeful discrimination were in fact true and that the State’s reasons
were merely a sham or pretext. See Ford, 1 S.W.3d at 693. Here, the trial court
found that sufficient race-neutral reasons for the strikes existed. Because a trial court
is in a unique position to make such a determination, the judge’s decision is accorded
great deference and will not be overturned unless it is clearly erroneous. Jasper, 61
S.W.3d at 421-22; Ladd v. State, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999). Here,
Turner offered no rebuttal evidence that the State’s reasons were incorrect or a
facade, and the record supports the prosecutor’s reasons for striking the venirepersons
in question. We conclude that Turner has not demonstrated that the State’s reasons
were a pretext for discrimination, and therefore has not met his burden of proof. 
After viewing the evidence in the light most favorable to the trial court’s ruling, we
hold that the finding was not clearly erroneous. 
Jury Instruction
            In his second issue, Turner asserts that the trial court erred in failing to include
his requested definition of “public servant” in the jury charge. Specifically, Turner
asserts that the jury charge should have included what type of public servant that he
impersonated, i.e., a peace officer. He contends that the initial offense of
impersonating a public servant is a misdemeanor, unless the public servant
impersonated is a peace officer and then the offense is a third-degree felony. Turner
further contends that because of this increase in penalty, the indictment and jury
charge must specify the type of public servant that he impersonated to avoid any
confusion by the jurors, and to enable him to properly prepare his defense. 
          The State responds that Turner’s requested jury charge is neither required nor
proper, because both the indictment and the application paragraph in the jury charge
track the applicable statute. Further, the State contends that the legislature amended
the Texas Penal Code in 1997, before Turner’s commission of the offense, and
impersonating a public servant is now a third-degree felony. Tex. Pen. Code Ann.
§ 37.11 (Vernon 2003). 
          In reviewing jury-charge error, we utilize a two-step process. We first
determine whether error actually exists in the charge. Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984). If we find that error is present, we must then
determine whether sufficient harm was caused by the error to warrant reversal. Arline
v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). If the charge error was the
subject of timely objection, reversal is required if that error was calculated to injure
the rights of the defendant, thereby causing some actual harm. Ovalle v. State, 13
S.W.3d 774, 786 (Tex. Crim. App. 2000). 
          The jury charge, in relevant part, defines “public servant” as follows: Public servant means a person elected, selected, appointed, employed,
or otherwise designated as one of the following, even if the person has
not yet qualified for office or assumed his duties: 
(A) an officer, employee, or agent of the government; or 
* * * * * * 
(F) a person who is performing a governmental function under a claim
of right although he is not legally qualified to do so. 
A charging instrument must convey sufficient notice to allow the accused to prepare
his defense; specifically, it must allege all facts and circumstances necessary to
establish the material elements of the offense. Galliford v. State, 101 S.W.3d 600,
605 (Tex. App—Houston [1st Dist.] 2003, pet. ref’d). A charging instrument tracking
the language of the statute will, as a general rule, satisfy constitutional and statutory
notice requirements. Id. Here, the indictment and the jury charge properly tracked
the language in the statute that prohibits impersonating a public servant. See Tex.
Pen. Code Ann. § 37.11. Texas Penal Code adequately defines “public servant” and
therefore put Turner on notice of the charges against him. The statutory definition
of “public servant” is sufficient to give an accused notice of the specific offense he
allegedly committed. See Harrison v. State, 633 S.W.2d 337, 339 (Tex.
App.—Houston [14th Dist.] 1982, no pet.) (stating that “we are not impressed with
appellant’s argument that the broad definitions of ‘public servant’ and ‘peace officer’
render the statute unconstitutional”). 
          A defendant is not entitled to have an instruction worded exactly as he
requests, as long as the charge correctly states the law and tracks the applicable
statute. Thacker v. State, 889 S.W.2d 380, 399 (Tex. App.—Houston [14th Dist.]
1994, pet. ref’d). In this case, the jury charge properly tracked the language set forth
in section 37.11 of the Texas Penal Code. We hold that the jury charge correctly
tracked the language of the statute, and therefore the jury charge did not contain error. 
The trial court thus did not err in overruling Turner’s objection to the charge. 
Witness Identification
          In his final issue, Turner contends that the trial court violated his due process
rights in allowing the pretrial identification evidence. He contends that law
enforcement conducted the pretrial identification process in an impermissibly
suggestive manner. The State responds that Turner failed to properly preserve this
issue for appeal and thus it is waived for our review. 
          We agree with the State. In order to properly preserve error on appeal, a party
must specifically object and obtain a ruling from the trial court, or object to the trial
court’s refusal to rule. Tex. R. App. P. 33.1. Arguments on appeal must comport with
the objection at trial, or the error is waived. Dixon v. State, 2 S.W.3d 263, 273 (Tex.
Crim. App. 1998); Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). 
This is true even if the complaint is based upon constitutional grounds. Espinosa v.
State, 29 S.W.3d 257, 260 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d). Here,
Turner neither filed a motion to suppress nor objected to any in-court identification
testimony. We therefore hold that Turner waived his complaint as to the pretrial
identification evidence. Conclusion
          We conclude that: (1) the trial court did not abuse its discretion in denying
Turner’s Batson challenge; (2) the trial court did not err in refusing his requested jury
definition; and (3) he failed to properly preserve the issue of pretrial identification for
appeal. We therefore affirm the judgments of the trial court.
 
                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.
Do not publish. Tex. R. App. P. 47.2(b).