

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00557-CR

---

LORA ANN FORREST                                                    APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

### FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY
### TRIAL COURT NO. 10014

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Lora Ann Forrest of possession of less than one gram of methamphetamine and assessed her punishment at twenty-two months' confinement and a $5,000 fine. The trial court sentenced her accordingly. In three issues, Forrest claims that the evidence is insufficient to support her

---

[1]*See* Tex. R. App. P. 47.4.

conviction, that the trial court erred by denying her request for a recess prior to opening statements, and that the trial court abused its discretion by admitting into evidence correspondence she sent to her former probation officer. We will affirm the trial court's judgment.

## II. Factual and Procedural Background

Corporal Kyle Ford with the Graham Police Department stopped Daphne Segars's vehicle in a high-crime neighborhood after observing it twice fail to signal when turning. Segars was driving, Anthony Foulks was in the passenger seat, and Forrest and Tia Jordan were in the backseat. Corporal Ford recognized Foulks by sight, having conducted several search warrants for narcotics at his house. Corporal Ford asked for identification from all of the occupants; Segars did not have hers. Corporal Ford asked dispatch to search for her by name and date of birth, and dispatch could not identify her. Corporal Ford then called for a drug dog.

When the drug dog arrived, Corporal Ford removed the occupants from the vehicle and conducted a pat down on each of them. The drug dog alerted on the trunk of Segars's car. Corporal Ford opened the trunk and found an ice chest with a blue joppy bag inside that contained drug paraphernalia. Because none of the passengers claimed ownership of the ice chest or its contents, Corporal Ford arrested all four individuals in accordance with the department's zero-tolerance policy. He then transported Foulks to jail, and the assisting officer, Corporal Daryl Bell, transported the three women.

2

While transporting the three women to jail, Corporal Bell rotated his dash-cam video recorder to record the actions of the two women in the backseat of his patrol car. After arriving at the police station, Corporal Bell found a crystal substance loose in the back seat of his patrol car. He notified Corporal Ford, who pulled down the patrol car's seat backs and found three plastic baggies containing methamphetamine stuffed between the seats and the seat backs. He found one chewed red plastic baggie behind Jordan's seat, another red plastic baggie behind Forrest's seat, and a clear baggie under the middle section of the backseat. Corporal Ford charged Jordan with possession of the chewed red baggie and the loose methamphetamine. He charged Forrest with possession of the second red baggie and the clear baggie.

### III. SUFFICIENCY OF THE EVIDENCE

In her third issue, Forrest challenges the sufficiency of the evidence to support her conviction. She argues that the State failed to prove that she knowingly or intentionally exercised actual care, custody, control, or management over any of the methamphetamine found in Corporal Bell's patrol car. *See* Tex. Health & Safety Code Ann. §§ 481.002(38), .115(a) (West Supp. 2014 & 2010).

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

3

307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

Here, before placing the three women in his patrol car, Corporal Bell checked his vehicle for contraband or weapons per the department's policy and found none. Corporal Bell testified that he placed Segars in the front seat and Jordan and Forrest in the backseat; Jordan sat behind the driver's seat, and Forrest sat behind the front passenger's seat. Jordan and Segars were handcuffed with their hands behind their backs, but Forrest was handcuffed in front because she had a pin in her hand from a prior surgery.

The State introduced in evidence the video from Corporal Bell's in-dash camera that showed the two women in the backseat. The video does not have audio. At one point, the video shows Forrest reach over and put her hand near or on Jordan's mouth. Corporal Bell testified that it looked like Forrest was putting something in Jordan's mouth, which indicated to him that evidence was being destroyed.

One red plastic baggie was found in the area behind Forrest's seat, and the clear baggie was found behind the middle section of the backseat. According to Corporal Bell, the backseat of his patrol car is designed for three people, but there is a raised area in the middle so that only two people can ride in the back. He said that it would have been impossible for Jordan to "somehow scoot over and shove something underneath the seat" on the passenger side. Viewing all the evidence in the light most favorable to the verdict, we hold that sufficient

4

evidence existed for a rational trier of fact to have found that Forrest knowingly or intentionally exercised actual care, custody, control, or management over the methamphetamine found in the clear plastic baggie and one red baggie found in Corporal Bell's patrol car. *See* Tex. Health & Safety Code Ann. §§ 481.002(38), .115(a); *Jackson*, 443 U.S.at 319, 99 S. Ct. at 2789; *Winfrey*, 393 S.W.3d at 768. We overrule Forrest's third issue.

## IV. RIGHT TO DELAY OPENING STATEMENT

In her first issue, Forrest argues that the trial court erred by denying her request for a recess and permitting the State to proceed with its opening statement immediately after jury selection despite the fact that the State was not prepared to begin presenting witness testimony until the following morning. Forrest asserts that the trial court's action compelled her to make her opening statement following the State's opening statement, rather than reserve opening until after the State rested. Thus, according to Forrest, she was effectively deprived of her statutory right to make a meaningful election as to the timing of her opening statement.

Article 36.01 of the code of criminal procedure, entitled "Order of proceeding in trial," provides that a defendant may make her opening statement immediately after the State's opening statement or may defer her opening statement until after the State's case-in-chief. Tex. Code Crim. Proc. Ann. art. 36.01 (West 2007). Thus, article 36.01 gives a defendant the ability to make a tactical decision about when to make an opening statement. *Moore v. State*, 868

5

S.W.2d 787, 789 (Tex. Crim. App. 1993).  The purpose of an opening statement is to communicate to the jury the party's theory of the case and to therefore aid the jury in evaluating and understanding the evidence to be presented. *McGowen v. State*, 25 S.W.3d 741, 747 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).  A defendant's opening statement shall state "[t]he nature of the defenses relied upon and the facts expected to be proved in their support."  Tex. Code Crim. Proc. Ann. art. 36.01(a)(5).  "[A]n opening statement is particularly valuable in a case where the defensive theory may strongly conflict with the State's case and may not be easily understood by the jury without the assistance of a prior outline or explanation of the defense case and where a defendant presents testimony from several witnesses."  *McGowen*, 25 S.W.3d at 747.

Here, on the first day of trial, the parties selected a jury and gave opening statements.  However, the State was not prepared to present any witness testimony until the next morning.  Forrest objected to the court's decision to allow opening statements prior to calling an early recess, claiming that it effectively eliminated her ability to reserve her opening statement until the opening of her case in chief.  The trial court overruled the objection and proceeded with opening statements.  But the trial court did not deny Forrest the right to present any opening statement.  *Cf. id.* at 745.  Nor did the trial court expressly deny Forrest her statutory right to decide when to make an opening statement.  *See* Tex. Code Crim. Proc. Ann. art. 36.01.  Forrest decided to make her opening statement immediately after the State's based on her concerns with allowing the

6

State's opening statement to "stand unchallenged" in the jurors' minds overnight without the jurors having heard any evidence. But defense counsel is always faced with the decision of whether to allow the State's case—as presented in its opening statement and via evidence presented in its case-in-chief—to "stand unchallenged" by deferring opening statements until after the State rests its case-in-chief. Surely a trial court does not err by commencing opening statements and having the State call its first witness to the stand, even if that witness presents only introductory, background testimony and the State does not pass the witness, prior to recessing for the day. *See Guillory v. State*, 397 S.W.3d 864, 868 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("Among its other inherent powers, a trial court has broad discretion to control the orderly proceedings in the courtroom."). We see little to no difference between such a situation—where the State is in the process of questioning its first witness when trial recesses for the day—and that in this case. In the former, as in the latter, the jury will have heard from the State prior to having heard the defense's theory of the case.

Even assuming, without deciding, that the trial court erred by allowing the State, over objection, to present its opening statement just before recessing and without presenting any evidence that day, the alleged error was harmless. The right to make an opening statement is a statutory right and not a constitutional imperative or mandate. *Moore*, 868 S.W.2d at 788–89. We review a statutory violation under the standard set forth by rule 44.2(b) of the Texas Rules of Appellate Procedure and must determine whether the error adversely affected a

7

substantial right of the defendant.  *See* Tex. R. App. P. 44.2(b); *Aguirre-Mata v. State*, 992 S.W.2d 495, 498 (Tex. Crim. App. 1999).  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

As we stated above, the trial court did not deny Forrest her right to present an opening statement or dictate when she made such a statement; she exercised her statutory right and decided to present her opening statement immediately following the State's.  *See* Tex. Code Crim. Proc. Ann. art. 36.01.  The error here, if any, stems from allowing the State to make its opening statement, without presenting any evidence, prior to recessing for the day, which "pressured" defense counsel into making the defense's opening statement at that time. Forrest argues that her opening statement would have been most effective just prior to presenting the defense's evidence.  But the defensive theory was not complex, and Forrest presented one witness—herself; she claimed that she was merely a passenger in the car, unaware that the other occupants possessed methamphetamine, and that the drugs found in the back of the patrol car belonged to Jordan, not her.  *See Espinosa v. State*, 29 S.W.3d 257, 259 (Tex.

8

App.—Houston [14th Dist.] 2000, pet. ref'd) (noting that the complexity of the facts and defensive issues can be determinative of whether the absolute denial of a defendant's right to make an opening statement affected the defendant's substantial rights); *see also Warren v. State*, No. 04-05-00303-CR, 2006 WL 777135, at *2 (Tex. App.—San Antonio Mar. 29, 2006, no pet.) (mem. op., not designated for publication) (same). Jury selection and opening statements occurred on October 21, 2013, and the guilt/innocence phase of trial concluded the following day; thus, the jury could easily refer back to Forrest's opening statement from the previous day as a "roadmap" of the defense's case. *See Espinosa*, 29 S.W.3d at 259 (considering the length of trial in addressing harm from the absolute denial of the defendant's right to make an opening statement). Based on our review of the record, we cannot say that any error in the trial court's denial of Forrest's request that the court recess for the day after jury selection had a substantial effect or influence on the jury's verdict. *See King*, 953 S.W.2d at 271. We overrule Forrest's first issue.

## V. ADMISSION OF EVIDENCE REGARDING PLEA NEGOTIATIONS

In her second issue, Forrest contends that the trial court abused its discretion by admitting into evidence a letter from Forrest to her former probation officer discussing a possible plea bargain. Forrest stated in the letter that she

was ready to accept an offer of probation that she had previously rejected because, at the time of the offer, she had not wanted to plead guilty.[2]

We review a trial court's evidentiary rulings for an abuse of discretion. *Smith v. State*, 898 S.W.2d 838, 843–44 (Tex. Crim. App.), *cert. denied*, 516 U.S. 843 (1995). If the trial court was correct under any theory of law applicable to the case, we will uphold the court's decision. *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1102 (2000).

By choosing to testify, a defendant puts her character for veracity in issue. *Hammett v. State*, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986). The Texas Court of Criminal Appeals has held that a "defendant who takes the witness stand may be cross-examined and impeached in the same manner as any other witness." *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). A defendant may be "contradicted, impeached, discredited, attacked, sustained, bolstered, made to give evidence against himself, cross-examined as to new matters, and treated in every respect as any other witness . . . ." *Id.* at 434–35. A defendant that "opens the door" to otherwise inadmissible evidence risks the adverse effect of having that evidence admitted. *Id.* at 435.

While a party who opens the door to otherwise inadmissible evidence risks the adverse consequences of its admission, evidence of plea negotiations is not

---

[2]Forrest agreed on cross-examination that she knew that probation was not within the range of punishment that she faced in this case. She testified that she was willing to plead guilty just to get out of jail if the State was offering probation.

10

generally relevant to proving the elements of an offense and may be overly prejudicial to a defendant. *See id.* In most cases, the trial court should exclude such evidence because of its potentially chilling effect on plea negotiations. *See* Tex. R. Evid. 410(4); *Prystash*, 3 S.W.3d at 527–28; *Smith*, 898 S.W.2d at 843–44. However, when the defendant opens the door by referencing plea bargains or negotiations in order to prove her truthfulness, the State may cross-examine the defendant and introduce evidence on the issue. *Bowley*, 310 S.W.3d at 435–36. In *Bowley*, Bowley testified in his own defense that he pleaded guilty to two prior offenses "[b]ecause [he] was guilty" but that he was not pleading guilty in the present case because he was not guilty. 310 S.W.3d at 433. The State then asked if he had decided to plead not guilty because he and the State could not agree on a plea bargain. *Id.* The court of criminal appeals held that the State's question was proper because Bowley had opened the door to it "by creating a circumstance in which the jury could infer that his not guilty plea was truthful." *Id.* at 435.

Here, as in *Bowley*, Forrest opened the door to discussion of her plea negotiations. During direct examination, she testified that she would have pleaded guilty if she had committed the offense. To support this claim, she testified that she had previously pleaded guilty to burglary of a building because she had actually committed that offense by helping her boyfriend with the proceeds of the burglary. Her testimony created a favorable inference as to why she pleaded not guilty in the present case, and it was permissible for the State to

11

establish an alternative inference. *See id.* (holding that similar questioning by the State was permissible to establish alternative motive for defendant's plea). Moreover, the letter at issue was not a negotiation with the State but was a letter from Forrest to her probation officer, and the State established that probation was not an available punishment option in this case. *See* Tex. R. Evid. 410 (prohibiting introduction of statements made in course of plea discussions with the State that do not result in a guilty plea). Thus, we hold that the trial court did not abuse its discretion by admitting the letter from Forrest to her probation officer.[3] *See id.* We overrule Forrest's second issue.

## VI. CONCLUSION

Having overruled Forrest's three issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 22, 2015

---

[3]Forrest argues on appeal that the letter was inadmissible under rules of evidence 401, 403, and 408. Because her only objection at trial was that the letter "goes into some content regarding plea discussions," we will not address her complaints under rules 401 and 403. *See* Tex. R. App. P. 33.1(a)(1); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013). Rule 408 deals with compromise and offers to compromise and is not applicable to evidence of plea negotiations. *See Smith v. State*, 898 S.W.2d 838, 843 (Tex. Crim. App. 1995).